Slip Op. 19-82

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE CHEMOURS COMPANY FC LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant,<br><br>          and<br><br>AGC CHEMICALS AMERICA, ET AL.,<br><br>                    Defendant-Intervenors. | Before: Mark A. Barnett, Judge<br>Consol. Court No. 18-00174<br><br>**PUBLIC VERSION** |

## OPINION AND ORDER

[Denying Plaintiff's motion to supplement the administrative record, amend its complaints, and remand the matter to the U.S. International Trade Commission. Denying as moot Defendant-Intervenor's motion to supplement the administrative record.]

Dated: July 3, 2019

James R. Cannon, Jr., Mary J. Alves, Ulrika K. Swanson, and James E. Ransdell, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Plaintiff.

Karl S. Von Schriltz, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant.  With him on the brief were Andrea C. Casson, Assistant General Counsel for Litigation, and Roop K. Bhatti, Attorney-Advisor.

John M. Gurley, Matthew M. Nolan, and Nancy A. Noonan, Arent Fox LLP, of Washington, DC, for Defendant-Intervenor Gujarat Fluorochemicals Limited.

Jordan C. Kahn, Max F. Schutzman, Dharmendra N. Choudhary, and Eve Q. Wang, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of New York, NY, for Defendant-Intervenor PTFE Processors Alliance and Consolidated Defendant-Intervenors Zhejiang Jusheng Fluorochemical Co., Ltd., Shandong Dongyue Polymer

Material Co., Ltd., Shanghai Huayi 3F New Materials Sales Co., Ltd., Zhonghao Chenguang Research Institute of Chemical Industry Co., Ltd., Jiangxi Lee & Man Chemical Ltd., Jiangsu Meilan Chemical Co., Ltd., and China Chamber of Commerce of Metals, Minerals & Chemical Importers.

Barnett, Judge:  This matter is before the court on Plaintiff's motion to supplement the administrative record, amend its complaints, and remand the matter to the U.S. International Trade Commission ("the ITC" or "the Commission").  Confidential Mot. to Suppl. the Admin. R., to Am. the Compls., and to Remand the Case to the Agency ("Pl.'s Mot."), ECF No. 49.  Defendant United States ("Defendant" or "the ITC") and Defendant-Intervenors oppose the motion.  Confidential Def.'s Mem. in Opp'n to Pl.'s Mot. to Suppl. the Admin. R., to Am. the Compls., and to Remand the Case to the Agency ("Def.'s Opp'n"), ECF No. 60; Def.-Ints.' Resp. in Opp'n to Pl.'s Mot., ECF No. 62; Confidential Gujarat Fluorochemicals Ltd.'s Resp. to Pl.'s Mot. to Suppl. the Admin. R., to Am. the Complaints and to Remand the Case to the Agency and Gujarat Fluorochemicals Ltd.'s  Mot. to Suppl. the Admin. R. in the Event that the Court Grants Pl.'s Mot. ("GFL's Opp'n and Cross-Mot."), ECF No. 64.  Defendant-Intervenor Gujarat Fluorochemicals Ltd. ("GFL") cross-moves to supplement the administrative record in the event the court grants Chemours' motion.  GFL's Opp'n and Cross-Mot. at 28.  For the reasons discussed herein, Plaintiff's motion is denied; GFL's cross-motion is denied as moot.

## BACKGROUND

In July 2018, the ITC issued a negative injury determining regarding polytetrafluoroethylene resin ("PTFE resin" or "PTFE") from India found by the U.S.

Department of Commerce ("Commerce") to be subsidized by the Government of India.[1]

*See Polytetrafluoroethylene Resin from China and India*, Inv. Nos. 701-TA-588 and 731-TA-1392-1393, USITC Pub. 4801 (July 2018) (final) ("*ITC Final I*"), PR 127, ECF No. 34.[2]  In November 2018, the ITC issued a negative injury determination regarding PTFE resin from the People's Republic of China ("China") and India found by Commerce to have been sold in the United States at less than fair value.  *See Polytetrafluoroethylene Resin from China and India*, Inv. Nos. 731-TA-1392-1393, USITC Pub. 4841 (Nov. 2018) (final) ("*ITC Final II*"), SPR 138, ECF No. 51-1.  In making its determinations regarding material injury and threat of material injury, the ITC cumulated subject imports from India and China.  CVD Views at 29, 58.[3]

---

[1] Defendant filed a confidential administrative record ("CR") and a public administrative record ("PR") associated with the countervailing duty ("CVD") investigation at ECF Nos. 33 and 34, respectively.  Defendant filed a supplemental confidential administrative record ("SCR") and a supplemental public administrative record ("SPR") associated with the antidumping duty ("AD") investigation at ECF Nos. 52 and 51, respectively.  The respective administrative records contain the confidential versions of the relevant staff report and views of the commission.  *See* Confidential Views of the Commission ("CVD Views"), CR 321, ECF No. 33-1; Confidential Staff Report (June 11, 2008) ("CVD Staff Report"), CR 285, ECF No. 33-2; Confidential Views of the Commission ("AD Views"), SCR 324, ECF No. 52-2; Confidential Staff Report (Oct. 24, 2018) ("AD Staff Report"), SCR 323, ECF No. 52-1 (concerning the antidumping investigation).  In the AD Views, the Commission adopted the findings set forth in the CVD Views.  *See* AD Views at 4-5.  The court references the confidential staff reports and views.

[2] Subject PTFE resin consists of granular, dispersion, and fine powder PTFE.  CVD Staff Report at I-8—I-9.  PTFE resin in the form of micropowder is excluded from the scope of the investigation.  *See id.* at I-9.  GFL produces micropowder PTFE in addition to in-scope PTFE.  *See, e.g.*, GFL's Opp'n & Cross Mot. at 12 & n.22 (citation omitted)

[3] To assess whether domestic producers are materially injured or threatened with material injury "by reason of" the subject imports, 19 U.S.C. §§ 1671d(b)(1), 1673d(b)(1),  the Commission considers "the volume of imports of the subject merchandise"; "the effect of imports of [subject] merchandise on prices in the United States for domestic like products"; and "the impact of imports of [subject] merchandise

Plaintiff, The Chemours Company FC LLC ("Chemours"), initiated separate actions challenging *ITC Final I* and *ITC Final II*, which the court consolidated under this lead action.  *See* Order to Consol. (Feb. 6, 2019), ECF No. 42.  Chemours alleges that the ITC's determinations lack substantial evidence or are otherwise contrary to law with respect to the Commission's definition of the domestic injury and its analyses of material injury and the threat of material injury.  *See, e.g.*, Compl. ¶¶ 34-49, ECF No. 8.

On March 8, 2019, Chemours filed the instant motion.  *See generally* Pl.'s Mot.  Chemours seeks to supplement the administrative record to include "information impugning the veracity of the foreign producer questionnaire[ responses] submitted by [GFL], a foreign producer and exporter of [PTFE] from India."  *Id.* at 1.  Chemours also seeks leave to amend the complaints filed in the consolidated actions to reflect its allegations of fraud in the questionnaire responses.  *Id.* at 2.  Chemours further requests the court to remand *ITC Final I* and *ITC Final II* to the Commission to reconsider its injury determinations in light of this information.  *See id.*  The court has jurisdiction pursuant to Section 516A(a)(2)(B)(ii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(ii) (2012), and 28 U.S.C. § 1581(c) (2012).[4]

---

on domestic producers of domestic like products . . . in the context of [domestic] production operations," *id.* § 1677(7)(B)(i).  The ITC's findings as to these factors rest on data compiled from both subject countries.  CVD Views at 42-43, 48, 58-61; *see also* CVD Staff Report, Table VII-8.

[4] Further citations to the Tariff Act of 1930, as amended are to the relevant portions of Title 19 of U.S. Code, and all references to the U.S. Code are to the 2012 edition.

LEGAL STANDARDS

## I.   Supplementing the Administrative Record

The court's review of an ITC determination is limited to the administrative record.

19 U.S.C. § 1516a(b)(1)(B)(i).  The record consists of "all information presented to or

obtained by . . . the Commission during the course of the administrative proceeding, *id.*

§ 1516a(b)(2)(A)(i);[5] that is, "information which was before the relevant decision-maker

and was presented and considered at the time the decision was rendered," *Nucor Corp.*

*v. United States*, 28 CIT 188, 229, 318 F. Supp. 2d 1207, 1244 (2004) (quoting *Beker*

*Indus. Corp. v. United States,* 7 CIT 313, 315 (1984)) (internal quotation marks

omitted).[6]  Limiting the court's review to the agency record furthers important efficiency

and finality considerations.  *See Vt. Yankee Nuclear Power Corp.* v. *Nat'l Res. Def.*

*Council, Inc.*, 435 U.S. 519, 554–55 (1978); *Essar Steel Ltd. v. United States* ("*Essar*

*Steel I*"), 678 F.3d 1268, 1277 (Fed. Cir. 2012).  Nevertheless, supplementation of the

administrative record and a remand for reconsideration by the Commission may be

appropriate when "a party brings to light clear and convincing new evidence sufficient to

make a prima facie case that the agency proceedings under review were tainted by

---

[5] The record also includes "a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register."  19 U.S.C § 1516a(b)(2)(A)(ii).

[6] Before issuing a final determination, the Commission must "cease collecting information" and permit interested parties "a final opportunity" to submit comments on information "the parties have not previously had an opportunity to comment."  19 U.S.C. § 1677m(g).  By regulation, the administrative record is closed on the date that final comments are due.  19 C.F.R. § 207.30(b).  There are exceptions to that rule, though none are relevant here.  *See id.*

material fraud." *Home Prods. Int'l, Inc. v. United States*, 633 F.3d 1369, 1378 (Fed. Cir.

2011).

## II.   Amending the Complaints

Pursuant to U.S. Court of International Trade ("USCIT") Rule 15(a), a plaintiff

may amend its complaint after 21 days of serving it "only with the opposing party's

written consent or the court's leave."  USCIT Rule 15(a)(2) (applicable to pleadings);

*see also* USCIT Rule 7(a)(1) (a complaint is a pleading).[7]  Whether to grant leave to

amend a complaint is committed to the court's discretion.  *See, e.g.*, *Foman v. Davis*,

371 U.S. 178, 182 (1962); *Fuwei Films (Shandong) Co. v. United States*, 35 CIT 1229,

1229, 791 F. Supp. 2d 1381, 1383 (2011).  "The court should freely give leave when

justice so requires."  USCIT Rule 15(a)(2).  Leave may be denied when the court finds

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman*, 371

U.S. at 182.

---

[7] Rule 15 permits amendments to pleadings without leave of court "once . . . within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  USCIT Rule 15(a)(1).  A responsive pleading is not required in an action arising under the court's jurisdiction pursuant to 28 U.S.C. § 1581(c), *see* USCIT Rule 7(a)(2), and no motions were filed pursuant to Rule 12.

DISCUSSION

I. **Chemours' Motion to Supplement the Administrative Record, Amend its Complaints, and Remand the Matter to the ITC[8]**

   A. **Parties' Contentions**

Chemours contends that the information it seeks to add to the administrative record provides clear and convincing evidence that GFL submitted fraudulent foreign producer questionnaire responses that were material to the Commission's negative final determination. Pl.'s Mot. at 4-13.[9] Chemours further contends that leave to amend its complaints should be granted because it was not until the Commission released its determinations that Chemours' company officials were alerted to discrepancies between business intelligence it routinely collected on GFL and the Commission's findings concerning GFL's questionnaire responses. *Id.* at 14-15.

The ITC contends that leave to amend and a remand should be denied because Plaintiff failed to exhaust its administrative remedies by timely alerting the Commission to the information during the pendency of the investigations. Def.'s Opp'n at 9-15. The ITC further contends that Chemours has failed to satisfy the standards for

---

[8] The court considers Chemours motion without regard to GFL's proposed record documents, which GFL seeks to introduce into the record solely on a contingent basis. In other words, the court does not weigh the degree to which GFL's evidence detracts from Chemours' evidence when deciding whether Chemours has met its burden.

[9] Subject producers, including GFL, reported information to the Commission based on "[a]ctual experience" for the years 2015 through 2017 and provided projections for 2018 and 2019. CVD Staff Report at VII-19, Table VII-8. Chemours argues that GFL's allegedly fraudulent questionnaire responses were material to various aspects of the Commission's findings regarding the threat of material injury to domestic producers. Pl.'s Mot. at 5-6.

supplementation of the record and remand as established by the Federal Circuit. *Id.* at

15-20.  The ITC also contends that Chemours has not provided clear and convincing

evidence that GFL's questionnaire responses were fraudulent or materially incorrect.

*Id.* at 20-32.[10]

GFL contends that Chemours has not supplied clear and convincing new

evidence of fraudulent questionnaire responses, GFL's Opp'n and Cross-Mot. at 3, and

materially misstates facts regarding GFL's capacity and production, *id.* at 4-6.  GFL

further asserts that Chemours' allegations, even if true, are immaterial to the

Commission's injury determination.  *Id.* at 6-7.  GFL contends that it responded to the

Commission's foreign producer questionnaires truthfully and accurately.  *Id.* at 9; *see

also id.* at 11-13 (arguing that Chemours capacity and production allegations are

incorrect); *id.* at 13-26 (responding to the evidence underlying Chemours' allegations).

GFL cross-moves the court to supplement the administrative record with additional

documents in the event the court grants Chemours' motion.  *Id.* at 28.[11]  GFL further

contends that leave to amend the complaints should be denied on the basis of undue

delay, lack of good faith by Chemours, and prejudice.  *Id.* at 8.

---

[10] Consolidated Defendant-Intervenors that were interested parties in the Commission's
investigation into PTFE from China adopted the ITC's opposition by reference.  Def.-
Ints.' Resp. in Opp'n to Pl.'s Mot. at 1-2.

[11] Chemours filed a response indicating its support for GFL's cross-motion.  Confidential
Pl.'s Resp. to Def. GFL's Apr. 12, 2019 Contingent Mot. to Suppl. the Admin. R. at 1,
ECF No. 72.  However, as discussed below, GFL's cross-motion is moot.

### B. Chemours Failed to Exhaust its Administrative Remedies Before the Commission; Thus, Supplementation of the Record Must Be Denied

"[T]he Court of International Trade shall, where appropriate, require

the exhaustion of administrative remedies." 28 U.S.C. § 2637(d).  The statute "indicates

a congressional intent that, absent a strong contrary reason, the court should insist that

parties exhaust their remedies before the pertinent administrative agencies."

*Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citation

omitted).  This permits the agency to address the issue in the first instance, prior to

judicial review.  *See id.* at 912–13; *Vinh Hoan Corp. v. United States*, 40 CIT ___, ___,

179 F. Supp. 3d 1208, 1226 (2016) (exhaustion "allow[s] the agency to apply its

expertise, rectify administrative mistakes, and compile a record adequate for judicial

review—advancing the twin purposes of protecting administrative agency authority and

promoting judicial efficiency") (citation omitted); *Diamond Sawblades Mfrs. Coalition v.*

*United States*, 33 CIT 48, 65-66 (2009) (requiring a respondent to have exhausted its

arguments before the ITC).  There are exceptions to the exhaustion requirement, such

as when "the party had no opportunity to raise the issue before the agency."  *Essar*

*Steel, Ltd. v. United States* ("*Essar Steel II*"), 753 F.3d 1368, 1374 (Fed. Cir. 2014)

(internal quotation marks and citation omitted).

The exhaustion requirement is complemented by the recognition that reopening

the record may be appropriate when "there is *new* evidence indicating that the original

record was tainted by fraud."  *Home Prods.*, 633 F.3d at 1379 (emphasis added); *see*

*also id.* at 1379-80 (joining the U.S. Court of Appeals for the Ninth Circuit in permitting

supplementation of the record when there is "[n]ewly discovered evidence of fraud . . . in

an administrative proceeding" and "administrative remedies have been exhausted").

Nevertheless, the court exceeds its authority when it orders an agency to reopen the

record to include documents a respondent withheld during an investigation.  *Essar Steel*

*I*, 678 F.3d at 1275-1279.

The factual record for the AD and CVD investigations closed on June 15, 2018.

*See Polytetrafluoroethylene (PTFE) Resin From China and India*, *Scheduling of the*

*Final Phase of Countervailing Duty and Anti-Dumping Duty Investigations*, 83 Fed. Reg.

12,815, 12,816 (ITC March 23, 2018) (noting the Commission's deadline for disclosing

factual information on which parties have not had an opportunity to comment).

Nevertheless, even after the factual record closes, for good cause the Commission may

accept additional written submissions.  *See id*.  Those submissions may include action

requests pursuant to 19 C.F.R. § 201.12, which allows "[a]ny party to a nonadjudicative

investigation [to] request the Commission to take particular action with respect to that

investigation."  A review of the evidence submitted in support of Chemours' motion

demonstrates that Chemours had the opportunity to present the evidence to the

Commission during the investigations or, at a minimum, alert the Commission to the

existence of the evidence and request reopening of the record.

Chemours' motion to supplement relies heavily on a June 2017 Pre-Feasibility

Report GFL prepared with respect to expanding PTFE production capacity ("Pre-

Feasibility Report"), GFL's third quarter fiscal year 2018 conference call with analysts

and investors ("Q3 FY18 Conference Call"), which occurred in February 2018, and an

environmental impact assessment report ("EIA") issued in March 2018.  *See generally*

Pl.'s Mot. at 7-13; *see also id.*, App. 1, ECF No. 49-1 (the Pre-Feasibility Report); *id.*,

App. 2, ECF No. 49-1 (the EIA); *id.*, App. 4, ECF No. 49-2 (transcript of the Q3 FY18

Conference Call).  All three documents are dated prior to the close of the factual record.

Indeed, Chemours acknowledges that the Pre-Feasibility Report and EIA were obtained

"through an online environmental clearance portal," *id.*, App. 6 (Decl. of Denise Dignam)

("Dignam Decl.") ¶ 8, suggesting ease of access and a lack of due diligence in obtaining

or submitting the information in a timely manner.  *Cf. Jacobi Carbons AB v. United*

*States*, 41 CIT ___, ___, 222 F. Supp. 3d 1159, 1195 (2017) (denying motion to

supplement when respondent "ha[d] not shown that it *could not* have obtained the

information in question in time to submit it to the agency, but rather, that it *did not* obtain

the information until it had the financial incentive to do so").

      In addition to the documents discussed above, Chemours had in its possession

corporate intelligence on GFL's operations before it appealed *ITC Final I* to this court.

*See* Pl.'s Mot., App. 3, ECF No. 49-2 (intelligence report dated July 20, 2018);

Summons, ECF No. 1 (dated Aug. 9, 2018).  Two additional documents were also

available before Chemours appealed *ITC Final II* to this court.  *See* Pl.'s Mot., App. 5,

ECF No. 49-2 (an August 2018 investor presentation ("Investor Presentation")); *id.*, App.

6, ECF No. 49-2 (GFL's second quarter fiscal year 2019 conference call ("Q2 FY19

Conference Call"), which occurred in November 2018).  With the exception of the Q2

FY19 Conference Call, all of the documents were available to Chemours before the

Commission's October 31, 2018 vote in the AD investigation.  *See* AD Staff Report at I-

2 (noting the scheduled date for the Commission's vote in the AD investigation).  Thus,

Chemours could have alerted the Commission to the existence of the documentation

and requested reopening of the record in either the CVD or AD investigations.  *See* 19

C.F.R. § 201.12; *cf. Home Prods*., 633 F.3d at 1377 (recognizing an agency's inherent

authority to reopen the record to consider evidence of fraud prior to the filing of an

appeal); *Sebacic Acid From China*, 70 Fed. Reg. 4,150 (ITC Jan. 28, 2005) (reopening

the record of the subject review).

　　　　Chemours' argument that it was unaware of the need to submit additional

information to the Commission before the record closed because company officials did

not have access to the proprietary questionnaire responses is unpersuasive.  *See* Pl.'s

Mot. at 14.  Chemours' counsel had access to the proprietary responses and access to

the information in Chemours' possession.  Chemours acknowledges that the company

"routinely collect[s] intelligence about the operations of [its] competitors, including [GFL]"

in "the ordinary course of business."  Dignam Decl. ¶ 6.  It was incumbent upon

Chemours and its counsel to exercise due diligence and ensure that all relevant

information in Chemours' possession was identified and submitted to the Commission in

a timely manner.  Supplementing the administrative record is not a remedy for a lack of

due diligence.  *See id*. ¶ 11 (explaining that Chemours provided documents to legal

counsel *after* the Commission rendered its determinations when it found that its

"competitive intelligence and experience in the market" differed from the ITC's findings).

Allowing Chemours to supplement the record at this late date would undermine the

Commission's investigatory deadlines and reward Chemours for failing to share

potentially relevant information with its counsel in a timely fashion.

In sum, Chemours had the opportunity to present arguments and evidence to the Commission and, thus, is not excused from exhausting its administrative remedies.  *See Essar Steel II*, 753 F.3d at 1374.  For the same reasons, supplementation of the record must be denied.  *See Essar Steel I*, 678 F.3d at 1275-1279.

### C. Chemours' Failure to Present *Clear and Convincing* Evidence of Fraud Provides an Additional Basis for Denying the Motion

Fraud is a serious allegation, one which concerns conduct that has been characterized as "conscious wrongdoing, an intention to cheat or be dishonest."  *United States v. Wunderlich*, 342 U.S. 98, 100 (1951).  Accordingly, a prima facie case of fraud in the agency proceedings must be established by clear and convincing evidence— more than a mere preponderance.  *See Home Prods.*, 633 F.3d at 1378.  Evidence is clear and convincing when it "creates in the trier of fact 'an abiding conviction that the truth of a factual contention is highly probable.'"  *SKF USA Inc. v. United States*, 29 CIT 969, 971, 391 F. Supp. 2d 1327, 1329 (2005) (quoting *Price v. Symsek,* 988 F.2d 1187, 1191 (Fed. Cir. 1993) (internal quotation marks omitted)).  Chemours' motion focuses on GFL's allegedly fraudulent reporting with respect to (1) Tetrafluoroethylene ("TFE") capacity;[12] (2) PTFE capacity and production; and (3) GFL's home market growth projections.  Pl.'s Mot. at 6-7.  Even if the court did not find that Chemours failed to exhaust its administrative remedies, Chemours has not met its burden with respect to any of the contested areas of inquiry.

---

[12] TFE is used to produce PTFE.  *See, e.g.*, CVD Staff Report at I-15.

### i.     TFE Capacity

Chemours asserts that GFL's Q3 FY18 Conference Call and the EIA show that GFL understated its capacity to produce TFE, implicating its reported capacity to produce PTFE. [13]  *Id*. at 6, 8-9.  In the Q3 FY18 Conference Call, GFL reported on the company's efforts to increase TFE capacity from 50 metric tons ("MT") per day to 90-95 MT per day by May 2018.  *Id*., App. 4 at 6-7.  Chemours relies on these figures to assert that GFL's annual capacity to produce TFE would almost double, from 18,250 MT up to 34,675 MT, which would increase GFL's ability to produce PTFE because PTFE production consumes the majority of GFL's TFE.  *See id*. at 8-9 & n.24 (citing *id*., App. 2 at 2.9, 2.12-2.13).

Chemours' calculations wrongly assume that GFL produces TFE 365 days per year, thereby overstating any increase in TFE capacity.  *See* GFL's Opp'n & Cross-Mot. at 12-13.  In fact, GFL's facilities operate less than a full year.[14]  More importantly, TFE is not the subject of this investigation and the Commission did not request data on TFE-specific capacity or production.  *See id*. at 16.  TFE is used by GFL to produce subject and non-subject merchandise.  *Id*. at 9, Ex. 2 at II-4d.  Any increase in TFE capacity does not necessarily mean an increase in GFL's capacity to produce PTFE, which is

---

[13] GFL reported that (1) [[
        ]]; (2) GFL has "[[
                                                                                                    ]]"; and (3) "GFL is [[
                        ]]."  GFL's Opp'n & Cross-Mot., Ex. 2 at II-4d (excerpt of GFL's questionnaire response).
[14] GFL reported that its production facilities operate "[[
        ]]."  *Id*., Ex. 2 at II-4b—4c; CVD Staff Report, Table VII-6.

subject to several additional constraints.[15]  Increased TFE capacity is, however,

consistent with GFL's ability to increase production of subject PTFE resin up to its PTFE

production capacity, which is consistent with GFL's questionnaire responses.[16]

Accordingly, Chemours has not presented clear and convincing evidence that GFL

made fraudulent statements with respect to TFE.

### ii.    PTFE Capacity and Production

Chemours asserts that GFL understated its 2019 projections for PTFE capacity

and production volumes.  Pl.'s Mot. at 9-12.  To support this assertion, Chemours relies

on the Pre-Feasibility Report, EIA, Investor Presentation, Q3 FY18 Conference Call,

and Q2 FY19 Conference Call.  *Id.* at 10-12.  In that Q2 FY19 Conference Call, GFL

reported that it anticipated producing about 1,300 MT of PTFE per month in 2018; 1,550

to 1,600 MT per month in 2019; and 1,750 MT per month in 2020, which represents

GFL's "fully expanded capacity of PTFE."  *Id.*, App. 6 at 6.  Chemours claims that these

figures show that GFL wildly understated its PTFE capacity.  *See id.* at 11-12.[17]

---

[15] Additional constraints include the [[
              ]].  GFL's Opp'n & Cross-Mot., Ex. 2 at II-4d.

[16] GFL projected [[                                    ]] in its production of PTFE resin for 2018 and
2019.  *See* CVD Staff Report, Table VII-6 (compiling GFL's questionnaire responses
regarding the three forms of subject PTFE resin).  GFL also reported [[          ]]
capacity utilization from 2017 ([[   ]] percent) to 2019 ([[   ]] percent).  *Id.*

[17] Specifically, Chemours asserts that prior to filing its final questionnaire response, GFL
told investors it would be producing about 42.3 million pounds of PTFE in 2019, which is
"[[                                                    ]]."  Pl.'s Mot. at 12 & n.36 (citing CVD
Staff Report, Table VII-6).  Chemours presumably calculated "42.3 million pounds" by
multiplying 1,600 by 12 months, and then multiplying the result by 2204 to convert the
figure from metric tons to pounds.  *See* GFL's Opp'n & Cross-Mot. at 19 (converting the
figures).

In fact, Chemours misstates GFL's reported 2019 production volume and errs in its comparison to the Q2 FY19 Conference Call information.[18]  The amounts stated in the Q2 FY19 Conference Call also appear to include all forms of PTFE, which would include non-subject PTFE micropowder.  *See id*., App. 6 at 6.  GFL also informed investors in 2018 that it "expects a ramp up in volumes of new grades of PTFE," *id*., App. 5 at 18, which is consistent with GFL's questionnaire response.[19]  The seven months of time between the questionnaire response and the Q2 FY19 Conference Call could also have caused some changes in the information used to make the projections. *Compare* GFL's Opp'n & Cross-Mot., Ex. 2 (cover page), *with* Pl.'s Mot., App. 6 at 1.[20]

Any differences in the figures also appear to be immaterial to the Commission's negative determination, which was based on cumulated subject imports.  CVD Views at 42-43, 58-61; *see also* CVD Staff Report, Table VII-8.[21]  A minor increase in cumulated production totals for 2019 is unlikely to affect the "appreciable quantities of excess capacity" the Commission identified in the subject industries but deemed immaterial

---

[18] Contrary to Chemours' assertion, GFL projected producing [[              ]] pounds, or roughly [[        ]] MT in 2019.  *See* CVD Staff Report, Table VII-6.
[19] GFL reported its efforts to "[[

                                                                            ]]," GFL's Opp'n & Cross-Mot., Ex. 2 at II-4d, which could include PTFE micropowder due to its need for "further processing," CVD Staff Report at I-9.
[20] GFL based its projections on several variables, including "[[


            ]]."  GFL's Opp'n & Cross-Mot., Ex. 2 at II-9a—9c.
[21] Cumulated subject producers' projected PTFE resin production volume for 2019 totaled [[        ]] pounds, CVD Staff Report, Table VII-8, which is about [[      ]] MT.

because "responding subject producers' export shipments to the United States

increased only from 2016 to 2017, when U.S. demand rose."  CVD Views at 59.

The Pre-Feasibility Report discusses a proposed increase in PTFE production,

with construction beginning once GFL obtained regulatory approvals and taking roughly

18 to 24 months to complete.  Pl.'s Mot., App. 1 at 5, 11.[22]  The Terms of Reference

("TOR") appended to the EIA indicate that some approvals were obtained in February

2018, *id*., App. 2, TOR (cover page), permitting GFL to increase PTFE production from

1,500 MT to 2,000 MT per month, *id*., App. 2, TOR at 1.  Chemours relies on these

documents to assert that "GFL expanded production of PTFE by 500 MT per month."

*Id*. at 10 & n.31 (citing *id*., App. 2, TOR at 2).

While the EIA and the Pre-Feasibility Report indicate preparation for increased

capacity, they are not evidence of actual increases in either capacity or production.  The

Pre-Feasibility Report indicates that construction would take 18 to 24 months from the

time that GFL obtained certain regulatory approvals, which did not occur until February

2018.  *See id*., App. 1 at 11; *id*., App. 2, TOR (cover page).  Chemours points to no

evidence that construction began, *see id*., App. 1 at 11,[23] and any increased production

---

[22] GFL was required to obtain an "Environment Clearance" from the State Level Expert
Appraisal Committee and a "No Objection Certificate" from the Gujarat Pollution Control
Board.  Pl.'s Mot., App. 1 at 11; *see also id*., App. 2 at xi (abbreviations and acronyms).
Production could not begin until GFL also obtained a "Consent & Authorization" from the
Gujarat Pollution Control Board.  *Id*., App. 1 at 11.
[23] Chemours attempts to link the estimated cost of the project to capital expenditures
discussed in the Q2 FY19 Conference Call to bolster its contention that the proposed
expansion project must be underway.  *See id*. at 11-12 & n.35 (citing *id*., App. 6 at 9);
*id*., App. 1 at 11 (containing the cost estimate for the project).  However, there is no
indication that the capital expenditures discussed in the Q2 FY19 Conference Call are

could not occur until GFL obtained a "Consent & Authorization" from the Gujarat

Pollution Control Board, and Chemours provides no evidence this occurred either, *see*

*id.*

    In the Q3 FY18 Conference Call, GFL reported on "increased [] PTFE capacity"

and noted that, "in the next 6 to 8 months[, GFL] will see even [its] expanded PTFE

capacity being fully-utilized." *Id*., App. 4 at 6.  GFL also referenced the development of

"new PTFE grades," *id*., App. 6 at 12, and the existence of a "blueprint" to expand its

PTFE capacity at an additional site, *id*., App. 6 at 9, 15.  In the Investor Presentation,

GFL reported on "[g]rowth in PTFE," including increased "volumes of the new grades of

PTFE." *Id*., App. 5 at 18.  Chemours reliance on these statements to support its claims

that GFL submitted fraudulent questionnaire responses, *id*. at 11-12, are also

unpersuasive.

    That GFL expected to see its "expanded PTFE capacity being fully-utilized" in

"the next 6 to 8 months" does not mean that GFL failed to report an increase in PTFE

capacity to the Commission.  *See id*., App. 4 at 6.  In fact, evidence submitted by

Chemours reflects that GFL increased PTFE capacity between 2013 and 2017,

coincident with increased production.  *See id*., App. 3 at 46.  GFL's questionnaire

responses are not inconsistent with its statements in the Q3 FY18 Conference Call

regarding capacity utilization.[24]  Chemours' reliance on GFL's "blueprint" for expansion

---

related to the PTFE expansion discussed in the Pre-Feasibility Report.  As GFL points
out, the capital expenditures discussed in the Q2 FY19 Conference Call covered GFL's
entire "Chemicals business." *Id*., App. 6 at 9; GFL's Opp'n & Cross-Mot. at 18.
[24] GFL anticipated reaching [[    ]] percent capacity utilization in 2019, CVD Staff Report,
Table VII-6, thus [[                                                    ]].

similarly indicates nothing more than a plan that may or may not come to fruition.  *See*

*id*. at 12 & n.37 (citing, *inter alia*, *id*., App. 6 at 9, 15).  Indeed, in the Q2 FY19

Conference Call, GFL explained that the blueprint pertained to fiscal year 2020 and was

"yet to be finalized."  *Id*., App. 6 at 9, 15.

Accordingly, Chemours has not presented clear and convincing evidence that

GFL made fraudulent statements with respect to PTFE.

### iii.    Home Market Growth Projections

Chemours asserts that GFL overstated its home market growth to the

Commission, thereby understating the extent to which its U.S. exports are likely to

increase.[25]  *Id*. at 12-13.  Chemours relies primarily on GFL's Investor Presentation in

which GFL explained that the "domestic market [is] growing at around 12-15 [percent]

per annum."  *Id*. at 12-13, App. 5 at 15.  According to Chemours, "[g]iven these growth

rates in its domestic market, GFL would have to increase its exports in order to achieve

its projected production levels."  *Id*. at 12; *see also id.* at 13 & n.41 (pointing to GFL's

assertion in the Q2 FY19 Conference Call that it "expect[s a] fairly significant increase in

sales in the [United States]") (citing *id*., App. 6 at 8).  Chemours' assertions are

unconvincing.

The market growth reported in the Investor Presentation applies to all

fluoropolymers sold by GFL.  *See id*., App. 5 at 15 (titled, "GFL positioning in the

fluoropolymer market"); *id.* at 19-26 (discussing the range of fluoropolymers produced).

---

[25] GFL projected a [[   ]] percent [[           ]] in its home market shipments from 2017 to
2018 and [[                ]] of [[   ]] percent from 2018 to 2019.  *Id*.

Accordingly, direct comparisons between the figures in the Investor Presentation and those reported to the Commission (which are limited to subject PTFE) are misplaced. Moreover, the Investor Presentation does not specify the precise timeframe covered by the reference to 12 to 15 percent annual growth, se*e id*., App. 5 at 15, so a comparison to GFL's questionnaire response is speculative.[26]

Chemours' focus on the Q2 FY19 Conference Call also ignores the context in which GFL's comments were made.  In the seven months between GFL's questionnaire response and the conference call, the United States imposed additional duties on PTFE imported from China.  *See* GFL's Opp'n & Cross Mot. at 25 & n.94 (citing *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,826 (USTR Aug. 16, 2018)).  Indeed, the transcript of the conference call demonstrates that GFL premised its expectations on events that occurred after April 2018: the ITC's negative injury determination in this proceeding and the implementation of the afore-mentioned duties on Chinese PTFE.  *See* Pl.'s Mot., App. 6 at 8.  Accordingly, Chemours has not presented clear and convincing evidence that GFL made fraudulent statements with respect to its home market growth.

In sum, Chemours has failed to present "clear and convincing new evidence sufficient to make a prima facie case that the agency proceedings under review were

---

[26] GFL's projected [[    ]] percent [[            ]] in home market shipments of PTFE resin from 2018 to 2019 is not necessarily inconsistent with the projected 12 to 15 percent annual domestic growth contemplated for all fluoropolymers.  *See id*; Pl.'s Mot., App. 5 at 15.

tainted by material fraud" on the part of GFL.  *See Home Prods.*, 633 F.3d at 1378.

Instead, Chemours offers arguments of interpretation in connection with evidence that

Chemours could—and should—have presented to the Commission in the first instance,

underscoring the importance of due diligence and the exhaustion of administrative

remedies.  Countenancing Chemours' dilatory tactics would undermine the efficiency

and finality interests that are served by limiting the court's review to the agency record.

*See Vt. Yankee*, 435 U.S. at 554-55; *Essar Steel I*, 678 F.3d at 1277.  Accordingly,

Chemours' motion to supplement the administrative record is denied.

### D.  Chemours' Motion for Leave to Amend its Complaints is Also Denied

Leave to amend a complaint may be denied when the amendment would be

futile.  *See, e.g.*, *Foman*, 371 U.S. at 182.  Amendment is futile when the claims would

not survive a motion to dismiss for failure to state a claim upon which relief may be

granted.  *See United States v. Active Frontier Int'l, Inc.*, Slip Op. 13-8, 2013 WL 174254,

at *2 (CIT Jan. 16, 2013) (citing *Kemin Foods v. Pigmentos Vegetales Del Centro,* 464

F.3d 1339, 1354–55 (Fed. Cir. 2006)); *cf. Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d

1328, 1333 (Fed. Cir. 2000) (additional claims futile when they lacked any "colorable

argument of possible success").

The court's review of the determinations at issue here is limited to the

administrative record.  19 U.S.C. § 1516a(a)(2)(A).  Chemours seeks to amend its

complaint to allege that fraudulent evidence submitted by GFL renders the

Commission's determinations unsupported by substantial evidence and unlawful.  *See*

[Proposed] Am. Consol. Compl. ¶ 59, ECF No. 48.  Because the court has denied

Chemours' related motion to supplement the administrative record with documentation

relevant to this claim, assessing the merits of this claim would require the court to

consider evidence outside of the record, which it cannot do.  *See* 19 U.S.C.

§ 1516a(b)(2)(A); S. Rep. No. 96-249, at 248 (1979), 1979 U.S.C.C.A.N. 381, 633 ("The

court is not to conduct a trial *de novo* in reviewing [agency] determinations" pursuant to

19 U.S.C. § 1516a).  Because Chemours' proposed claim thus fails to state a claim

upon which the court may grant relief, amendment would be futile.  Accordingly,

Chemours' motion is denied.

## II.    GFL's Contingent Cross-Motion

GFL moved to add several additional documents to the administrative record "[i]n

the event that the [c]ourt grants Chemours' motion."  GFL's Opp'n & Cross-Mot. at 28.

Because the court is denying Chemours' motion, GFL's motion is denied as moot.

### CONCLUSION AND ORDER

For the foregoing reasons, Chemours' motion to supplement the administrative

record, amend its complaints, and remand the matter to the ITC is hereby **DENIED**.

GFL's contingent cross-motion to supplement the administrative record is hereby

**DENIED AS MOOT**.

/s/     Mark A. Barnett
Mark A. Barnett, Judge


Dated: July 3, 2019
         New York, New York